IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLARENDON AMERICA INSURANCE   3:11-CV-01344-BR
COMPANY, a Corporation,

   Plaintiff,      OPINION AND ORDER

v.

STATE FARM FIRE AND CASUALTY
COMPANY, a Corporation,

   Defendant.


**JAMES L. HILLER**
Hitt Hiller & Monfils, LLP
411 S.W. Second Avenue
Suite 400
Portland, OR 97204
(503) 228-8870

   Attorneys for Plaintiff

**MICHAEL J. WALKER**
**J. PHILIP PARKS**
Parks Bauer Sime Winlker and Fernety, LLP
570 Liberty Street S.E.
Suite 200
Salem, OR 97301
(503) 371-3502

   Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff's Motion (#14) for Partial Summary Judgment and Defendant's Motion (#25) for Summary Judgment.  For the reasons that follow, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion.


## BACKGROUND

At some point before the events at issue in this insurance coverage case, Gladys McCoy Apartments Limited Partnership (McCoy), whose general partner was Opportunities for Neighborhood Empowerment Company (ONE), obtained an apartment insurance policy from Defendant State Farm Fire and Casualty Company that provided in pertinent part:

> DEFINITIONS:  Throughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy.
>
> * * *
>
> COVERAGE L - BUSINESS LIABILITY
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies.
>
> * * *
>
> RIGHT AND DUTY TO DEFEND
>
> We will have the right and duty to defend any

2 - OPINION AND ORDER

claim or suit seeking damages payable under this
policy even thought the allegations of the suit
may be groundless, false or fraudulent.

\* \* \*

BUSINESS LIABILITY EXCLUSIONS

Under Coverage L, this insurance does not apply:

\* \* \*

11.  to **property damage** to:

a.  property you own, rent or occupy;

\* \* \*

WHO IS AN INSURED

1.  If you are designated in the Declarations as:

\* \* \*

b.  a partnership or joint venture, you are
an insured.  Your members, your partners
and their spouses are also insured but
only with respect to the conduct of your
business,

\* \* \*

2.  Each of the following is also an insured

\* \* \*

b.  any person, other than your employee, or
your organization while acting as your
real estate manager.

Decl. of James Hiller, Ex. B at 46, 65-66, 68 (emphasis in
original).

In November 1996 McCoy entered into a construction contract
with Mega Pacific Company for Mega to act as the general

3 - OPINION AND ORDER

contractor to build an affordable housing and commercial development project.  On January 16, 1997, McCoy and Curtom Building and Development Company entered into a contract "for construction management services" to be performed by Curtom on the development project.  In 1998 the development project was substantially complete, but McCoy discovered alleged deficiencies in Mega's work shortly after completion and requested corrective work to be done.  Mega engaged in periodic corrective work on the development project through 2003.

In 2005 McCoy discovered new deficiencies and filed an action against Mega in Multnomah County Circuit Court in July 2007 in which McCoy brought claims for breach of contract, breach of warranty, negligence, nuisance, and trespass related to Mega's role as the general contractor of the development project.

On May 6, 2008, Curtom; Sawhorse Construction Management, LLC, a subcontractor of Curtom; and ONE, among others, filed in the state-court case a third amended answer that included affirmative defenses, counterclaims, and a third amended third-party complaint in which they alleged, among other things:

> Third-party defendant Opportunities for Neighborhood Empowerment Company, Inc., or ONE Company ("ONE"), was and *is . . . the general partner of Gladys McCoy Apartments Limited Partnership*.  ONE provided construction management services during construction of the projects as agent of the owner.
>
> Third-party defendant Curtom Building Development Corporation ("Curtom") . . . provided *construction*

> *management services* during construction of the
> project, as agent of the *owner*.
>
> Third-party defendant Sawhorse Construction
> Management, LLC . . . provided construction *and
> real estate management services* during and after
> construction of the project as an agent of the
> *owner*.
>
>                          * * *
>
> At the request and direction of plaintiff, Curtom
> provided *construction management services* in
> connection with the project.  Such services were,
> in part, for the benefit of Mega Pacific in that
> Mega Pacific relied on Curtom in performing and
> ultimately being able to complete its work.
> Curtom knew, or in the exercise of reasonable care
> should have known, that Mega Pacific would be
> unable to complete the project as desired by
> plaintiff without Curtom adequately and reasonably
> performing its responsibilities as construction
> manager.
>
>                          * * *
>
> The alleged injury complained of by plaintiff, if
> proven, would result in joint and several
> liability to both Mega Pacific, as general
> contractor, and to Curtom, *as construction
> manager*.
>
>                          * * *
>
> At the request and direction of plaintiff,
> Sawhorse provided construction and *real estate
> management services* during and after construction
> of the project as an agent of the *owner*.

Hiller Decl., Ex. A at ¶¶ 29-31, 59, 61, 64 (emphasis added).

In April 2008 Curtom, Sawhorse, and ONE tendered defense of

the McCoy action to State Farm under McCoy's apartment policy.

Curtom asserted in its tender that it was entitled to defense by

State Farm on the ground that

5 - OPINION AND ORDER

>Curtom had a contract with the McCoy Partnership to provide "construction management services" in relation to the construction of the Gladys McCoy Apartment complex. . . .  Services performed by Curtom were for the benefit of the McCoy Partnership and such services were performed by Curtom acting in the capacity of agent of the McCoy Partnership as its disclosed principal.

Hiller Decl., Ex. E at 1.

On May 1, 2008, State Farm accepted defense of Sawhorse because "in the [McCoy third-party complaint] Sawhorse . . . is alleged to be a real estate manager."  Hiller Decl., Ex. D.  At some point State Farm also accepted defense of ONE on the basis that ONE was alleged in the third-party complaint to be the general partner of McCoy.

State Farm, however, declined defense of Curtom on August 8, 2008, on the ground that Curtom was not an insured under the policy.  In particular, State Farm relied on the fact that the third-party complaint did not allege Curtom was either a partner of McCoy or that Curtom performed real-estate management services.  State Farm continued "to reserve any and all rights [it had]" under the McCoy policy.  Hiller Decl., Ex. F at 5.

The McCoy matter settled in 2009.  Curtom incurred defense costs in the course of the McCoy litigation that were ultimately paid by Curtom's own insurance company, Plaintiff Clarendon America Insurance Company.

On May 31, 2011, Clarendon filed an action in Multnomah County Circuit Court against State Farm seeking reimbursement of

6 - OPINION AND ORDER

defense expenses that Clarendon paid on Curtom's behalf in the McCoy matter.  After Clarendon served State Farm on October 28, 2011, State Farm removed the matter to this Court on November 9, 2011, on the basis of diversity jurisdiction.

On August 3, 2012, Clarendon filed its Motion for Partial Summary Judgment in which it seeks a judgment that State Farm wrongfully denied a defense to Curtom in the McCoy litigation. On August 24, 2012, State Farm filed its Motion for Summary Judgment seeking a judgment in State Farm's favor as to all issues in this case.

On December 20, 2012, the Court heard oral argument on the parties' Motions and took this matter under advisement.

## STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a genuine dispute as to a material fact.  *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demonstrating the existence of genuine issues for trial." *In re*

*Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id*. (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

"A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009)(citation omitted). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149

(9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.


**DISCUSSION**

As noted, State Farm declined Curtom's tender of defense on the ground that Curtom was not an insured under the policy because the third-party complaint did not allege Curtom was a partner of McCoy or performed real-estate management services. In addition, State Farm also asserted at summary judgment that it did not owe a duty to defend Curtom under the owned-property exclusion of the McCoy policy.

**I.   Curtom was not an insured under the McCoy policy.**

**A.   Standard**

State Farm asserts the Court is limited by the standard set out in *Ledford v. Gutoski*, 319 Or. 397 (1994), when determining whether Curtom was an insured under the policy. In *Ledford* the Court concluded when "evaluating whether an insurer has a duty to defend[,] the court looks only at the facts alleged in the complaint" and the terms of the policy. *Id.* at 400. *See also Nat'l Union Fire Ins. Co. of Pittsburgh v. Starplex Corp.*,

220 Or. App. 560, 573 (2008)("[w]hether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy.").

According to Clarendon, however, the Oregon Court of Appeals recently refined the analysis set out in *Ledford* in *Fred Shearer & Sons, Inc. v. Gemini Ins. Co.,* 237 Or. App. 468 (2010). Under the "*Fred Shearer*" rule, Clarendon contends Curtom was not limited to the four corners of McCoy's policy and the third-party complaint when Curtom sought to establish tha it was an insured under McCoy's policy.

In *Fred Shearer* the Evenstads hired Walsh Construction Company to perform various repairs to their residence in May 2000. Walsh subcontracted with Fred Shearer to apply stucco to the exterior of the Evenstads' residence. Shearer used a product distributed by TransMineral USA, which had a commercial general liability (CGL) policy during the relevant period issued by Gemini Insurance Company. 237 Or. App. at 472. After the stucco product allegedly failed, the Evenstads brought an action against Walsh asserting a number of claims related to the performance of Walsh and Shearer. Walsh, in turn, filed a third-party complaint against Fred Shearer and TransMineral. *Id*. Fred Shearer tendered the defense of the claims against it to Gemini asserting it was covered under TransMineral's CGL policy through a "vendors endorsement." *Id*. Gemini rejected Fred Shearer's tender of

10 - OPINION AND ORDER

defense, and Fred Shearer filed an action seeking a declaration that Gemini owed it a duty to defend under the vendors endorsement.  *Id*. at 472-73.  The trial court concluded, among other things, that Fred Shearer was an insured for purposes of the vendors endorsement, and, therefore, the court granted summary judgment in favor of Fred Shearer.  On appeal Gemini argued it was

> impossible to tell *from the pleadings in the underlying action or the policy language* that Shearer sold or distributed the stucco product in the ordinary course of business[, and because] the four corners of those documents . . . exclusively govern whether Gemini owes any duty to defend, and "[n]othing in [Walsh's] allegations expressly or impliedly connotes that Shearer 'distributed' or 'sold' the TransMineral products," . . . the trial court erred in granting summary judgment in favor of Shearer.

*Id*. at 474 (emphasis in original).

         In rejecting Gemini's argument, the Oregon Court of Appeals first noted the same basic rule on which State Farm relies here:

> Whether an insurer has a duty to defend an action against its insured depends on two documents:  the complaint and the insurance policy.  An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy.
>
> In evaluating whether an insurer has a duty to defend, *the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy[.]*

11 - OPINION AND ORDER

* * *

      An insurer should be able to determine from the
face of the complaint whether to accept or reject
the tender of the defense of the action.

319 Or. 397, 399-400 (quotations omitted; emphasis in original).

Notably, the Court of Appeals then observed:

      However, it is important to understand what was at
issue in *Ledford* - and what was not.  The question
in *Ledford* was whether the complaint could "impose
liability for *conduct* covered by the policy."  319
Or. at 400, 877 P.2d 80 (emphasis added).  The
court was not concerned with the preliminary
question:  whether the party seeking coverage was
actually an *insured* within the meaning of the
policy.  Rather, *Ledford* - and, to our knowledge,
every other case in which Oregon appellate courts
have held that their inquiry was limited to the
facts of the underlying complaint - presumed the
existence of an "insured" within the meaning of
the policy.

*Id*. at 475-76 (citations omitted).  Ultimately, the Court of

Appeals held:

      When the question is whether the insured is being
held liable for conduct that falls within the
scope of a policy, it makes sense to look
exclusively to the underlying complaint.  That
complaint sets the boundaries of the insured's
liability, and, as the court reasoned in *Isenhart*,
"[i]f a contrary rule were adopted, requiring the
insurer to take note of facts other than those
alleged, the insurer frequently would be required
to speculate upon whether the facts alleged could
be proved."  233 Or. at 54, 377 P.2d 26.

      The same cannot be said with respect to whether a
party seeking coverage is an "insured."  The facts
relevant to an insured's relationship with its
insurer may or may not be relevant to the merits
of the plaintiff's case in the underlying
litigation.  The plaintiff in the underlying case
is required to plead facts that establish the

> defendant's liability; the plaintiff often is not
> required to establish the nature of the
> defendant's relationship to some other party or to
> an insurance company in order to prove a claim. In
> this case, for example, the Evenstads had no
> reason to allege that Shearer sold or distributed
> TransMineral's products in the ordinary course of
> its business; nor did Walsh need to allege that
> fact in order to make out its third-party claim
> against Shearer.
>
> For that reason, we do not see the logic in
> requiring Shearer to demonstrate that the
> underlying complaints establish the relationship
> between TransMineral and Shearer, or,
> consequently, that Shearer is Gemini's "insured"
> within the meaning of the policy.

*Id*. at 478.

Clarendon asserts the analysis and holding in *Fred
Shearer* applies to all cases in which there is a question as to
whether an organization or individual is an insured under the
policy, and, therefore, this Court may and should consider
extrinsic evidence to determine whether Curtom was an insured
under McCoy's State Farm policy.

On the other hand, State Farm asserts *Fred Shearer*
merely announced a narrow exception to the general rule set out
in *Ledford* and the Oregon Court of Appeals considered extrinsic
evidence on the issue of Shearer's status as an insured under the
TransMineral policy only because it was impossible to tell from
the complaint and the policy language whether Fred Shearer sold
or distributed the stucco product in the ordinary course of
business and, therefore, impossible to determine from the

13 - OPINION AND ORDER

complaint and the policy whether Shearer qualified as an insured.
State Farm emphasizes the Court of Appeals did not address
whether extrinsic evidence may be considered when it is possible
to determine from the complaint and the policy whether an
organization or individual is an insured.  In support of its
arguments, State Farm notes the Court of Appeals specifically
distinguished its decision in *Fred Shearer* from its decision in
another case as follows:

> In *Winther v. Valley Ins. Co.*, 140 Or. App. 459,
> 915 P.2d 1050 (1996), we looked exclusively to the
> facts in the complaint where a partner claimed
> that she was an insured under her partnership's
> insurance policy.  In that case, the real issue
> was whether the alleged "conduct" was covered
> under the language of the terms of the policy,
> which covered personal injuries "[a]rising out of
> the conduct of your business [.]"  *Id*. at 461, 915
> P.2d 1050.  There may be cases in which the
> question of an "insured" is inextricably
> intertwined with the relevant "conduct" under the
> policy; this is not such a case.

*Id*. at 476 n.6.

The Court concludes this matter is also not such a
case.  The court in *Fred Shearer* merely carved out an exception
to the general rule announced in *Ledford* to apply only in the
particular circumstances that occurred in *Fred Shearer; i.e.*, the
insurer specifically alleged it was impossible to determine Fred
Shearer's status from the face of the complaint, and the court
agreed.  Accordingly, the court concluded a limited exception to
*Ledford* is permissible in instances when courts are attempting to

14 - OPINION AND ORDER

determine whether an organization or individual was an insured under a policy.

Here, as noted, the third-party complaint makes several allegations as to Curtom's status as a construction manager and its performance of construction-management duties. For example, the third-party complaint alleges:

> Third-party defendant Curtom Building Development Corporation ("Curtom") . . . provided *construction management services* during construction of the project, as agent of the *owner*.
>
> * * *
>
> At the request and direction of plaintiff, Curtom provided *construction management services* in connection with the project. Such services were, in part, for the benefit of Mega Pacific in that Mega Pacific relied on Curtom in performing and ultimately being able to complete its work. Curtom knew, or in the exercise of reasonable care should have known, that Mega Pacific would be unable to complete the project as desired by plaintiff without Curtom adequately and reasonably performing its responsibilities *as construction manager*.
>
> * * *
>
> The alleged injury complained of by plaintiff, if proven, would result in joint and several liability to both Mega Pacific, as general contractor, and to Curtom, *as construction manager*.

Hiller Decl., Ex. A at ¶¶ 30, 59, 61 (emphasis added). Moreover, in its tender of defense to State Farm, Curtom emphasized it was entitled to a defense under the policy because "Curtom had a contract with the McCoy Partnership to provide 'construction

15 - OPINION AND ORDER

management services' in relation to the construction of the

Gladys McCoy Apartment complex."  Hiller Decl., Ex. E at 1.

There was not any indication in the third-party complaint or in

Curtom's tender of defense that Curtom asserted coverage because

it was acting as a real-estate manager.

On this record, the Court concludes it was possible for

State Farm to determine from the complaint and the policy whether

Curtom was an insured under the McCoy policy especially in light

of the emphasis Curtom placed on "construction manager services"

in its tender letter.  It follows, therefore, that the narrow

exception to the *Ledford* rule announced in *Fred Shearer* does not

apply to this matter.  Accordingly, the Court declines to look to

extrinsic evidence to determine whether Curtom was an insured

under McCoy's policy.

**B.    Analysis**

Under Oregon law "[i]f an insurance policy explicitly

defines the phrase in question, we apply that definition."

*Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 333

(2006)(citing *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303,

307-08 (1999).

> If the policy does not define the phrase in
> question, we resort to various aids of
> interpretation to discern the parties' intended
> meaning.  Under that interpretive framework, we
> first consider whether the phrase in question has
> a plain meaning, *i.e.*, whether it is susceptible
> to only one plausible interpretation.  If the
> phrase in question has a plain meaning, we will

16 - OPINION AND ORDER

apply that meaning and conduct no further
analysis.  If the phrase in question has more than
one plausible interpretation, we will proceed to
the second interpretive aid.  That is, we examine
the phrase in light of the particular context in
which that [phrase] is used in the policy and the
broader context of the policy as a whole.  If the
ambiguity remains after the court has engaged in
those analytical exercises, then any reasonable
doubt as to the intended meaning of such [a]
term[ ] will be resolved against the insurance
company.  However, as this court has stated
consistently, a term is ambiguous . . . only if
two or more plausible interpretations of that term
withstand scrutiny, *i.e.*, continue[ ] to be
reasonable despite our resort to the interpretive
aids outlined above.

*Id.* (quotations omitted).

As noted, the State Farm policy defines an insured as

follows:

WHO IS AN INSURED

1.   If you are designated in the Declarations as:

* * *

b.   a partnership or joint venture, you are
an insured.  Your members, your partners
and their spouses are also insured but
only with respect to the conduct of your
business,

* * *

2.   Each of the following is also an insured

* * *

b.   any person, other than your employee, or
your organization while acting as your
real estate manager.

It is undisputed that Curtom was not a "Named Insured"

or a partner of McCoy.  The parties agree, therefore, that if Curtom is to be considered an insured under the policy, it will be so only under 2(b) as an organization "acting as [McCoy's] real estate manager."

Because the insurance policy does not define the term "real estate manager," the Court must determine whether that term has a plain meaning.  Although there is not any Oregon authority specifically on point, the Court notes courts in other jurisdictions have addressed this issue.  For example, in *Savoy v. Action Products Company* the court held "a 'real estate manager' is simply one who manages real estate for another.  A manager is one who 'conducts, directs or supervises something.' He is a person who has the conduct or direction of a thing."  324 So.2d 921, 923 (La. App. 1975).  Similarly, in *Insurance Company of North America v. Hilton Hotels* the court adopted the reasoning of *Savoy* and "join[ed] several other courts in finding that the term 'real estate manager' is not ambiguous.  Accordingly, the Court will consider the term in its usual and ordinary meaning."  908 F. Supp. 809, 815 (D. Nev. 1995)(citations omitted). Finally, the Court notes in *City of Portland v. Accident Prevention Division* in the context of an appeal by the City of Portland arising out of a citation and notice of penalty issued by the Accident Prevention Division of the Workers' Compensation Board for an alleged violation of a provision of the Oregon

Health and Safety Act (OSHA) code, the Oregon Court of Appeals
held "a construction manager administers and coordinates the
entire construction project for an owner, thereby engaging in
management functions similar to those of a general contractor."
49 Or. App. 1091, 1096 (1981).

      The Court finds the analysis in *Savoy*, *Hilton Hotels*,
and *City of Portland* is helpful and, applying it here, concludes
"real estate manager" has a plain meaning: One who conducts,
directs or supervises another's real estate as distinct from a
construction manager who conducts, directs, or supervises
another's construction.

      As noted, although the third-party complaint contained
numerous allegations that Curtom provided construction-management
services and acted as the construction manager, there is not any
allegation in the third-party complaint or the underlying
complaint that Curtom was a real-estate manager or performed the
duties of a real-estate manager. Moreover, the allegations in
the third-party complaint also specifically differentiate between
construction managers and real-estate managers. For example, the
third-party complaint alleged:

> Third-party defendant Sawhorse Construction
> Management, LLC . . . provided construction *and
> real estate management services* during and after
> construction of the project as an agent of the
> owner.

               * * *

19 - OPINION AND ORDER

> At the request and direction of plaintiff,
> Sawhorse provided construction and *real estate
> management services* during and after construction
> of the project as an agent of the owner.

Hiller Decl., Ex. A at ¶¶ 31, 64.

In any event, Clarendon also asserts because the third-party complaint alleges Sawhorse, who is Curtom's agent, acted as a real-estate manager and because an agent is authorized only to perform acts that the principal is authorized to perform, Curtom must also have been acting as a real-estate manager. Clarendon points to Paragraph 70 of the third-party complaint to support its contention that Sawhorse was Curtom's agent. Paragraph 70, however, alleges only that "Mega Pacific, ONE, Curtom and Sawhorse all performed roles in furtherance of the ultimate outcome of the project. As such, . . . Curtom and Sawhorse shared the same common duty, if any, to plaintiff as related to the completion of the project." As the Court noted at oral argument, parties who share a common duty are not necessarily in an agent/principal relationship. Because Clarendon does not point to any other allegation in the third-party complaint to support the argument that Sawhorse was Curtom's agent and because the allegations of Paragraph 70 are insufficient in this regard, Clarendon has not demonstrated Sawhorse was Curtom's agent under the allegations of the third-amended complaint.

On this record the Court concludes there was not any basis for State Farm to conclude that Curtom was an insured under

20 - OPINION AND ORDER

the McCoy policy, and, accordingly, the Court concludes State Farm did not owe Curtom a duty to defend it in the McCoy action.

**II.  Owned-property exclusion.**

Even if Curtom was an insured under the policy, State Farm also asserts the owned-property exclusion in the McCoy policy applies and eliminated any duty by State Farm to defend Curtom.

**A.  The parties' positions.**

State Farm notes the McCoy policy precludes liability coverage for "**property damage** to:  a.  property you own, rent or occupy."  The policy defines "you" as "the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy."

It is undisputed that the McCoy case involved damage to property owned by McCoy (the Named Insured).  According to State Farm, it did not have any duty to defend McCoy or any of the parties named in the third-party complaint because the McCoy policy precluded coverage for damage to property owned by McCoy.

According to Clarendon, the language of the owned-property exclusion "should be read to interpret the coverage for each insured individually.  That is, when the policy is read to determine whether Curtom is covered, the owned property exclusion applies to the property owned by Curtom and not any other person or organization potentially insured by the policy."  Because Curtom did not own the property at issue, Clarendon reasons that

coverage for Curtom should not be excluded.  In the alternative,
Clarendon asserts the owned-property exclusion is ambiguous and,
therefore, must be construed against State Farm as the drafter.

**B.   Analysis.**

As noted, the owned-property exclusion in the McCoy
policy provided as follows:

Under Coverage L, this insurance does not apply:

* * *

11.  to **property damage** to:

a.   property [the Named Insured shown in the
Declarations and any other person or
organization qualifying as a Named
Insured under this policy] own[s],
rent[s] or occup[ies].

Oregon courts have held owned-property exclusions such
as this one are unambiguous and prohibit coverage for damage done
to property owned by the Named Insured.  *See, e.g., Baumann v. N.*
*Pac. Ins. Co.*, 152 Or. App. 181, 187-89 (1998)(The court
concluded the exclusion for "property damage to property owned by
an insured" was unambiguous and precluded coverage for soil
contamination on the insured's property.).  Because the damage at
issue in the McCoy matter was undisputedly to property owned by
McCoy, State Farm contends the owned-property exclusion precludes
a duty to defend any action arising out of the damage to this
property, including the McCoy action.

Clarendon points to *Triad Mechanical, Inc. v. Coatings*

*Unlimited, Inc.*, No. 07-516-HU, 2007 WL 2713842 (D. Or. Sept. 12, 2007), to support its assertion that the owned-property exclusion does not apply or is ambiguous.  In *Triad* the plaintiff brought an action in state court alleging the defendant, a subcontractor on the plaintiff's construction project, was negligent and breached its contract.  The parties settled the action, and the state court entered a stipulated judgment that named the plaintiff as the judgment creditor and the defendant as the judgment debtor.  The plaintiff then served the defendant's insurance company with a writ of garnishment asserting the insurance company was obligated to pay the judgment under the terms of the defendant's construction insurance contract.  The insurance company removed the matter to federal court.  *Id.*, at *1.  The plaintiff moved to remand on the ground that, among other things, the insurance company waived its right to remove "by virtue of the 'service of suit' provision in the insurance contract" that provided in pertinent part:  "In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America."  *Id.*, at *2.

The policy provided

> the words 'you' and 'your' refer to the Named
> Insured shown in the Declarations, and any other
> person or organization qualifying as a Named
> Insured under this policy.  The words 'we', 'us'
> and 'our' refer to the company providing this
> insurance.

23 - OPINION AND ORDER

*Id.*, at *3.

The insurance company asserted remand was not required because the plaintiff as garnishor rather than the insurance company was invoking the service-of-suit provision. *Id.*, at *3. The court rejected the insurance company's assertion because, among other things, "as an additional insured, plaintiff is entitled to bind [the insurance company] to the terms of the clause." *Id.* The court concluded "at a minimum, the use of 'you' in the policy is ambiguous as to whether it refers to additional insureds" because the policy as a whole was ambiguous as to whether it "differentiates an additional insured . . . from a named insured." *Id.*, at *5.

The cases on which the court relies in *Triad* involve policies in which the party seeking coverage is named as a "additional insured" under a policy endorsement but was also a Named Insured under the terms of the policy. Nevertheless, in at least one of those cases in *Triad*, the court concluded the phrase "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the declarations, and any other person or organization qualifying as a Named Insured under this policy" was not ambiguous. *See Wyner v. North Am. Specialty Ins. Co.*, 78 F.3d 752, 755 (1st Cir. 1996). In *Wyner* the plaintiffs were "both an 'ADDITIONAL INSURED' and 'an insured' (under an endorsement modifying the CGL portion) under the CGL portion of

24 - OPINION AND ORDER

the policy." *Id*.  The First Circuit, however, concluded "neither the capitalization pattern nor the usage distinction between the terms 'Named Insured' and 'Additional Insured' referred to by the [plaintiffs] can suffice to create legal ambiguity." *Id*. at 756. The court also concluded "the ordinary and common reading of the language in this context would be to find that 'you' and 'your' were defined as the Named Insured not to draw a distinction between [the Named Insured] and the [plaintiffs], but between [the Named Insured] and [the plaintiff's insurance company]." *Id*.

Here there is not any issue involving an "additional insured" endorsement and interplay with the individuals or organizations covered under the owned-property exclusion as Named Insureds.  The Court, therefore, adopts the reasoning of *Baumann* rather than the reasoning of *Triad* and concludes the owned-property exclusion relieves State Farm of any duty to defend Curtom in the McCoy action even if Curtom qualifies as an insured.

Accordingly, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment.

## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's Motion (#14)

25 - OPINION AND ORDER

for Partial Summary Judgment, **GRANTS** Defendant's Motion (#25) for

Summary Judgment, and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 3rd day of January, 2013.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge